UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| JANE DOE,<br><br>    Plaintiff,<br><br>    v.<br><br>THE RIVERWOODS COMPANY, AT EXETER, NEW HAMPSHIRE<br><br>    Defendant. | Civil Action No. |

**COMPLAINT**
**JURY TRIAL REQUESTED**
<u>**INJUNCTIVE RELIEF REQUESTED**</u>

NOW COMES the Plaintiff, under the pseudonym Jane Doe, by and through undersigned counsel, and complains against the Defendant, The Riverwoods Company, at Exeter, New Hampshire ("RWC"), as follows:

<u>INTRODUCTION</u>

1. This action arises under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*; the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*; Section 504 of the Rehabilitation Act ("Rehab Act"), 29 U.S.C. §§ 701 *et seq.*; and New Hampshire's common law protections against wrongful discharges in violation of public policy.

<u>PARTIES</u>

2. Doe is a United States citizen residing in Concord, New Hampshire.

3. RWC is a New Hampshire corporation with its principal place of business in Exeter, New Hampshire.

1

4. Birch Hill Terrace ("BHT") was an assisted living facility doing business in Manchester, New Hampshire, and its parent company was RWC. BHT is now named RiverWoods Manchester and its parent company is still RWC.

## JURY TRIAL DEMAND

5. Plaintiff requests a trial by jury on all issues triable to a jury.

## JURISDICTION

6. This Court has subject matter jurisdiction over Doe's federal and state claims under 28 U.S.C. §§ 1331 and 1367.

7. On or about December 23, 2019, Doe filed a charge of discrimination with the New Hampshire Commission for Human Rights ("NHCHR") which dual filed that charge with the U.S. Equal Employment Opportunity Commission ("EEOC").

8. On January 27, 2021, the EEOC issued Doe a Notice of Right to Sue with respect to her ADA claims.

9. On January 21, 2021, the NHCHR concluded its investigation.

10. Doe has exhausted all administrative remedies with respect to all claims set forth in this Complaint.

## FACTUAL ALLEGATIONS

11. Doe began working for RWC at BHT in October 2015 as a Registered Nurse. Throughout Doe's time at BHT, she primarily worked on the night shift and worked approximately 32 hours per week.

12. Doe's daughter, who is under the age of 18, has a variety of conditions that substantially limit her in one or more major life activities.

13. Doe's daughter's health conditions constitute impairments and disabilities under the ADA and Rehab Act. She has an actual disability under the ADA and Rehab Act and she also satisfies the "regarded as" and "record of" definitions of disability under the ADA and Rehab Act.

14. Doe's daughter's health conditions also constitute serious health conditions under the Family Medical Leave Act ("FMLA").

15. Doe asked Defendant for intermittent FMLA leave in 2018 and 2019 so that, should the need arise, she could take intermittent leave from work in order to care for her daughter.

16. Doe was eligible for FMLA leave at the time she applied for it because she had worked for RWC more than 12 months and more than 1250 hours in the 12-month period preceding her application for FMLA leave. Also, at all relevant times, more than 50 RWC employees worked within 75 miles of where Doe worked.

17. RWC was a covered employer under the FMLA at the time Doe requested FMLA leave because at all relevant times it employed more than 50 employees.

18. Doe's daughter's primary care provider submitted FMLA medical certification forms to RWC on or about April 6, 2018, and April 29, 2019, which indicated that Doe's daughter's health problems constituted a serious health condition that entitled Doe to FMLA leave.

19. Although Doe asked RWC to approve her for intermittent FMLA leave to care for her daughter, after RWC approved her request Doe never needed to leave work in the middle of a shift in order to care for her daughter.

20. RWC approved Doe's 2018 FMLA request and, on or about May 8, 2019, it also approved her 2019 FMLA request.

21. On June 18, 2019, Doe's supervisor, Amy Reynolds, called and told Doe that she could no longer work on the night shift. Ms. Reynolds stated that "corporate" had decided to decrease the number of nurses on the night shift from three to two.

22. Ms. Reynolds stated that Doe would no longer work on the night shift because it was hard to predict when she would need to use intermittent FMLA leave. Ms. Reynolds then suggested that Doe take a position on the day shift.

23. The Director of Human Resources, Kathryn Mears-Limric, also spoke to Doe and explained that she could no longer work on the night shift because if she had to take intermittent FMLA leave to care for her daughter, they would only have one nurse working because the night shift would be staffed by only two nurses rather than three.

24. Ms. Mears-Limric also stated to Doe that her pay would be reduced when she moved to the day shift because she would no longer receive a pay differential for working at night.

25. The day shift position that RWC offered to Doe was far different from her night shift position and would have worked a significant hardship on Doe by forcing her to use more unpaid FMLA leave during the daytime in order to care for her disabled daughter. Additionally, moving to the day shift would have resulted in reduced pay due to the loss of the night differential.

26. But for Doe's child's disability and Doe's related request for intermittent FMLA leave, she would not have been removed from the night shift.

27. RWC's decision to remove Doe from the night shift and offer her a less desirable job on the day shift constituted (a) associational disability discrimination; (b) interference with her FMLA rights; and (c) retaliation against her for taking FMLA leave.

28. Due to this discriminatory and retaliatory treatment, Doe decided to resign from her full-time position with RWC and communicated that decision to RWC on June 27, 2019. Her resignation constituted a constructive discharge.

29. Doe suffered damages as a direct result of RWC's violations of her rights including, but not limited to, lost wages and loss of enjoyment of life.

## COUNT I:  FMLA

30. Paragraphs 1-29 are incorporated by reference.

31. RWC interfered with Doe's FMLA rights.

32. RWC retaliated against Doe because she took FMLA leave.

## COUNT II: ADA – Disability Discrimination

33. Paragraphs 1-32 are incorporated by reference.

34. RWC's conduct violated the ADA's prohibition against associational disability discrimination.

35. RWC discriminated against Doe because of her daughter's disability.  But for Doe's daughter's disability RWC would not have removed Doe from her position.

## COUNT III:  Rehab Act - Discrimination

36. Paragraphs 1-35 are incorporated by reference.

37. At all relevant times, RWC was a recipient of federal financial assistance in the form of Medicare and/or Medicaid reimbursements.

38. RWC's conduct violated the Rehab Act's prohibition against associational disability discrimination.

39. RWC discriminated against Doe because of her daughter's disability. But for Doe's daughter's disability RWC would not have removed Doe from her position.

## COUNT IV: Wrongful Discharge

40. Paragraphs 1-39 are incorporated by reference.

41. RWC constructively discharged Doe for reasons that violate New Hampshire public policy.

42. RWC is liable in tort under New Hampshire's common law claim for wrongful discharge in violation of public policy.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court grant the following relief:

A. Declare the conduct engaged in by Defendant to be in violation of her rights;

B. Enjoin Defendant, its agents, successors, employees, and those acting in concert with it from continuing to violate her rights;

C. Order Defendant to reinstate Plaintiff or award front pay to Plaintiff;

D. Award lost future earnings to compensate Plaintiff for the diminution in expected earnings caused by Defendant's discrimination;

E. Award equitable-relief for back pay, lost benefits, and prejudgment interest;

F. Award compensatory damages in an amount to be determined at trial;

G. Award punitive damages in an amount to be determined at trial;

H. Award enhanced compensatory damages in an amount to be determined at trial;

I. Award liquidated damages;

J. Award nominal damages;

K. Award attorney's fees, including legal expenses, and costs;

L. Award prejudgment interest;

M. Permanently enjoin Defendant from engaging in any employment practices which discriminate on the basis of disability and/or violate the FMLA;

N. Require Defendant to mail a letter to all employees notifying them of the verdict against it and stating that Defendant will not tolerate discrimination in the future;

O. Require that Defendant post a notice in all of its workplaces of the verdict and a copy of the Court's order for injunctive relief;

P. Require that Defendant train all management level employees on the protections afforded by the FMLA, ADA, and Rehab Act;

Q. Require that Defendant place a document in Plaintiff's personnel file which explains that Defendant violated her rights under the FMLA, ADA, and Rehab Act, when it removed her from the night shift and/or constructively discharged her; and

R. Grant to Plaintiff such other and further relief as may be just and proper.

Respectfully submitted,

Dated: April 27, 2021         */s/* Allan K. Townsend

Allan K. Townsend (NH Bar No. 269356)
Attorney for the Plaintiff

EMPLOYEE RIGHTS GROUP
92 Exchange Street 2nd floor
Portland, Maine 04101
Tel. (207) 874-0905
Fax (207) 874-0343
Allan@EmployeeRightsLaw.Attorney